**UNITED STEELWORKS OF AMERICA, AFL–CIO–CLC, Jack Morgan, individually and on behalf of a subclass of retirees, and Harry Burger, individually and on behalf of a subclass of retirees, Plaintiffs,**

v.

**IVACO, Atlantic Steel Industries Collectively Bargained Health Benefit Plan and the Group Insurance Plan for Bargaining Unit Employees, Defendants.**

No. 1:01–CV–0426–CAP.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 27, 2002.

**694**

Norman J. Slawsky, Jacobs, Slawsky & Barnett, Atlanta, GA, Richard P. Rouco, phv, Richard S. Frankowski, phv, Whatley Drake, Birmingham, AL, for plaintiffs.

Gregory C. Braden, Alston & Bird, Atlanta, GA, for defendants.

*ORDER*

PANNELL, District Judge.

This action arises from the termination by Atlantic Steel Industries ("Atlantic Steel") of the health and life insurance benefits of various retirees and is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et. seq.*, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et. seq.* The matter is before the Court on the plaintiffs' motion for class certification [Doc. No. 21–1].

## I. FACTUAL BACKGROUND

Atlantic Steel's hourly production and maintenance employees were represented by the United Steelworkers of America, AFL–CIO–CLC ("the union"). The union entered a succession of collective bargaining agreements with Atlantic Steel. The same parties also negotiated agreements concerning health and life insurance benefits. Atlantic Steel distributed literature to employees and retirees explaining the terms of the plans.

On October 12, 1998, Atlantic Steel announced that it was closing its facility in downtown Atlanta and notified retirees that it was terminating its health and life insurance plans. The health insurance plan was discontinued on April 1, 1999, and the life insurance plan was discontinued on December 31, 1998. Subsequently, Atlantic Steel purchased paid up life insurance policies for retirees in· a reduced amount using a formula to proportionally distribute the available funds.

The plaintiffs, the union and two individual retirees, filed this action on February 13, 2001. The complaint includes four counts: (I) breach of contract, (II) breach of health plan terms, (III) breach of insurance plan terms, and (IV) promissory estoppel. The plaintiffs seek restoration of health and life insurance benefits to their previous levels, as well as compensatory damages for monetary losses sustained as a result of the loss of benefits.

On October 12, 2001, the plaintiffs moved for class certification pursuant to Fed. R.Civ.P. 23. The plaintiffs have proposed the certification of two subclasses of retirees.

The first proposed subclass would include "[w]ith respect to health insurance benefits, all employees (and their eligible dependents) that (1) retired after 1993, (2) were members of the bargaining unit at the time of retirement and (3) were eligible for a pension benefit." Plaintiffs' Motion Seeking Class Certification at ¶ 2.[1] Mr. Morgan is the proposed class representative. He retired from Atlantic Steel in 1996 and received health insurance benefits under the retiree health insurance plan until coverage was discontinued in 1999.

The second proposed subclass would include "[w]ith respect to life insurance benefits, all employees (and their spouses and beneficiaries) who (1) retired prior to 1990, (2) were members of the bargaining unit at the time of retirement (i.e. covered under a collective bargaining agreement), (3) were receiving a pension benefit from Atlantic Steel and (4) who have received a life insurance death benefit less than the amount of life insurance they were receiving at the time of retirement." *Id.*[2] Mr. Burger is the proposed class representative. He retired from Atlantic Steel in 1976 and received a life insurance benefit that was reduced in 2000.

In addition to opposing class certification as to Count IV, the defendants have requested an award of attorney's fees for defending this action.

## II. LEGAL ANALYSIS

Class certification is governed by Federal Rule of Civil Procedure 23. Subsection (a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The four requirements are commonly referred to as "the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *General Tel. Co. of the Northwest, Inc. v. E.E.O.C.,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980). The burden of proving these prerequisites is on the party seeking class certification. *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir.1996).

Rule 23(b) provides that, in addition to the Rule 23(a) prerequisites, a class must fall into one of three categories: (1) the pursuance of separate actions would create a risk of inconsistent verdicts or would, as a practical matter, make individual adjudications dispositive of the interests of class members who are nonparties; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the putative class such that declaratory or injunctive relief with respect to the class as a whole would be appropriate; or (3) questions of law or fact common to members of the class predominate over issues affecting individual members, and class adjudication is preferable to other methods of litigation for purposes of a fair and efficient resolution of the controversy.

The fact that parties seek monetary relief will not necessarily defeat a Rule 23(b)(2) class action "so long as the predominant relief sought is injunctive or declaratory." *Murray v. Auslander,* 244 F.3d 807, 812 (11th Cir.2001). In order to not predominate the action, any monetary relief must be incidental to requested injunctive or declaratory relief. *Id.* In other words, " 'damages [must] flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief [and][i]deally ... should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.' " *Id.* (quoting *Allison v. Cit-*

---

1. The restriction to employees who retired after 1993 is included because as of that date the parties added to the health insurance agreement a provision limiting Atlantic Steel's right to terminate the plan.

2. The restriction to employees who retired prior to 1990 is included because as of that date the parties added to the life insurance agreement a provision allowing Atlantic Steel to unilaterally terminate the fund.

*go Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998)).

### A. Counts I, II and III

As a preliminary matter, the Court notes that the defendants do not oppose certification of the proposed subclasses for Counts I (breach of contract), II (breach of health plan terms) and III (breach of insurance plan terms).

Applying Rule 23(a), the Court finds that the plaintiffs satisfy the prerequisites for class certification of these counts. The plaintiffs allege that 504 retirees were affected by the termination of health and life insurance benefits, making joinder impracticable even when the subclass sizes are reduced based on individual retirement dates.[3] The disputed issue on all three counts is whether insurance benefits were vested under the plan documents and whether the defendants retained the legal right to modify or cancel the plans; thus, the evidence that will resolve these claims lies in the collectively-bargained health and life insurance agreements. The relevant language in these agreements does not appear to have been modified during the time period at issue; therefore it appears that all potential plaintiffs are subject to identical contract terms. Moreover, the defendants' act of cancelling the plans was done uniformly and affected each health insurance beneficiary and each life insurance beneficiary in the same manner. There are also no apparent conflicts of interest among the class members, and there is no reason to believe that class counsel will fail to adequately represent the plaintiffs. Thus, the Court is satisfied that the plaintiffs have met the requirements of Rule 23(a).

■ As to Rule 23(b), the plaintiffs assert that the defendants acted on grounds generally applicable to the class when they reduced retiree health and life insurance bene-

fits, and therefore final injunctive relief with respect to the class as a whole is appropriate. The plaintiffs are seeking injunctive relief ordering the defendants to restore their health and life insurance benefits. The monetary relief the plaintiffs seek is limited to the restoration of benefits and related compensatory damages for monetary losses sustained as a result of the loss of benefits. The Court finds that the defendants' actions were generally applicable to the class as a whole and that any monetary relief is incidental to the requested injunctive relief, and thus that certification of the two subclasses under Rule 23(b)(2) is proper.

Accordingly, the Court grants the plaintiffs' motion for class certification with respect to Counts I, II and III.

### B. Count IV

Class certification with respect to Count IV (promissory estoppel) is contested. This count relates only to the provision of life insurance and thus affects only the second proposed subclass.

#### 1. The prerequisites of Rule 23(a)

##### a. Numerosity

■ The numerosity requirement simply asks whether there are so many members of the class that joinder of them all would be impracticable. Fed.R.Civ.P. 23(a)(1). Factors determining whether joinder of class members is practicable include the size of the class, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action and the size of each class member's claim. *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981).[4]

In the instant case, the plaintiffs assert that 504 retirees were affected by the defen-

---

3. As noted above, the proposed subclasses would be limited by date, with the health insurance subclass including only persons who retired after 1993 and the life insurance subclass including only persons who retired prior to 1990. It is unclear from the record exactly what number of persons would be thereby excluded from either subclass, though the Court notes that the two subclasses are mutually exclusive and that the

collective number of individuals in the two subclasses should be less than 504.

4. The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

dants' decision to terminate life insurance.[5] Further, the defendants do not contest numerosity. For the foregoing reasons, the Court finds that the plaintiffs meet the numerosity requirement.

### b. Commonality

■ To satisfy the requirement of commonality, a matter must present questions of law or fact common to the class. Fed. R.Civ.P. 23(a)(2). There must be a sufficient nexus between the legal claims of the various class members, considering "the group characteristics of the class as a whole." *Prado–Steiman v. Bush*, 221 F.3d 1266, 1278–79 (11th Cir.2000).

While the merits of the plaintiffs' claims are not before the Court at this stage of the litigation, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974), "evidence relevant to the commonality requirement is often intertwined with the merits," *Nelson v. U.S. Steel Corp.*, 709 F.2d 675, 679 (11th Cir.1983).

Count IV raises the issue of ERISA promissory estoppel. Under ERISA, welfare benefit programs must be governed by written plan documents filed in accordance with strict reporting and disclosure requirements. *Alday v. Container Corp. of America*, 906 F.2d 660, 665 (11th Cir.1990).[6] Thus, "any retiree's right to lifetime medical benefits at a particular cost can only be found if it is established by contract under the terms of the ERISA-governed benefit plan document." *Id.* Oral representations and informal written agreements cannot be used to modify the clear terms of an ERISA plan. *Id.* However, the Eleventh Circuit has created a narrow exception to this general rule for equitable estoppel claims based on ambiguous plan provisions. *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1286 (11th Cir.1990).

Ordinarily, "[e]stoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's acts were repudiated."

*Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir.1994). With regard to ERISA, estoppel claims are available only when (1) the provisions of the plan are ambiguous and (2) representations serve to interpret that ambiguity, rather than to modify the plan itself. *Id.* Detrimental reliance is also an essential element of the claim. *Id.*

Since estoppel claims under ERISA are based on an individual's detrimental reliance on purported representations about an existing plan, rather than on any general contract undertaken on behalf of all retirees, these claims are necessarily grounded on evidence that is specific to each individual. "Because of their focus on individualized proof, estoppel claims are typically inappropriate for class treatment." *Sprague v. General Motors Corp.*, 133 F.3d 388, 398 (6th Cir.1998). In this instance, in order to make or defend the claims, it is not enough to argue as to whether the plan provisions were ambiguous; in addition, the parties must bring forward evidence regarding any statements made to each retiree about the life insurance plan and the extent of that retiree's reliance on the alleged statements. Such evidence cannot possibly be made on a class-wide basis.

> Even if the plaintiffs are able to prove that [the defendant] disseminated a false and uniform message to all potential retirees ..., they would also have to show that all members of the class would have deferred their retirement.... This sort of decision would necessarily have been highly individualized for each potential retiree.

*Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 457 (11th Cir.1996) (affirming denial of class certification on various claims alleging that defendant fraudulently induced employees to retire by a certain date and under a certain plan). *See also Sprague*, 133 F.3d at 398 (reversing certification of a class on an ERISA equitable estoppel claim because "each plaintiff's claim depended upon facts and circumstances peculiar to that plaintiff, [so that] class-wide relief was not appropri-

---

5. As noted above, this number will certainly decrease when individuals' retirement dates are taken into account.

6. Welfare benefit plans are "benefits such as medical insurance that may be ancillary to but are not part of a pension plan." *Alday*, 906 F.2d at 663. In the instant case, this would include both the health and the life insurance plans.

ate"); *Alday v. Container Corp. of America,* 1988 WL 236038, at *3 (M.D.Fla. Sept.02, 1988) (finding plaintiffs' promissory estoppel claim lacked commonality because "[q]uestions of a person's reliance on oral and written statements are personal and subjective in nature and not ones which can be lumped together into one common understanding"), *aff'd on other grounds,* 906 F.2d at 667. For the foregoing reasons, the Court finds that the proposed subclass fails to meet the commonality requirement.

### c. Typicality

■ Additionally, a class representative's claims or defenses must be typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). Typicality is related to the element of commonality, but focuses on the "individual characteristics of the named plaintiff in relation to the class." *Prado–Steiman,* 221 F.3d at 1279. A representative's claim is typical if there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* However, typicality does not require identical claims or defenses, and minor factual variations will not render a class representative's claim atypical. *Id.*

In the instant case, the typicality element fails for largely the same reason as the commonality element. Each plaintiff's claim rests on the representations purportedly made to that individual and that individual's reliance on such representations. Even if the Court were to presume that all plan participants received identical messages, as the plaintiffs contend, each participant would have relied on the messages in a different manner and to a different extent; thus, it is not possible to conclude that the plaintiff's claims are typical of the potential class members. *See Sprague,* 133 F.3d at 399; *Alday,* 1988 WL 236038, at *3 (finding plaintiffs' promissory estoppel claim lacked typicality). For the foregoing reasons, the Court finds

that the proposed subclass fails to meet the typicality requirement.

### d. Adequacy of Representation

As the final prerequisite under subsection (a), the class representative must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The underlying purpose behind this requirement is to assure that the legal rights of absent class members are protected. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 726 (11th Cir.1987). This requirement is generally met if (1) the class representatives do not have interests antagonistic to other class members and (2) plaintiffs' counsel can adequately represent the interests of the class. *Id.* Additionally, class representatives must possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative. *Id.*

The defendants do not contest the adequacy of the class representatives or counsel in this action, and there is no reason to believe that any conflict of interest will arise between the class representatives and members of the proposed subclasses or that class counsel will fail to adequately represent the plaintiffs. For the foregoing reasons, the Court finds that the adequacy of representation requirement is met.

### 2. The Requirements of Rule 23(b)

Because the Court finds that the proposed subclass does not satisfy the prerequisites of Rule 23(a) with respect to Count IV, there is no reason to consider the application of Rule 23(b).

### C. Defendants' Request for Attorneys' Fees

■ The ERISA statute provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In determining whether to award fees in an ERISA action, a court should consider five factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the

opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir.1993). In some instances, the existence or lack of one factor, particularly bad faith, may be dispositive. *See, e.g., Andrews v. Employees' Retirement Plan of First Alabama Bancshares, Inc.*, 938 F.2d 1245, 1248 (11th Cir.1991) (reversing an award of attorney's fees by finding dispositive the lack of bad faith on the part of the plan); *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476, 1485 (11th Cir.1995) (upholding a denial of attorney's fees based entirely on lack of bad faith).

■ In the instant case, the Court finds that the plaintiffs have not acted in bad faith in litigating their promissory estoppel claim. Moreover, on reviewing the remaining factors, the Court does not find that an award of attorney's fees would be appropriate at this stage of litigation. For the foregoing reasons, the Court denies the defendants' request for attorney's fees.

## III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the plaintiffs' motion for class certification with respect to Counts I, II and III and DENIES the motion for class certification with respect to Count IV [Doc. No. 21–1].