Dan C. TOOTLE,

v.

ARINC, INC., et al.

No. CIV.A. CCB–03–1086.

United States District Court,
D. Maryland.

June 10, 2004.

Edward Patrick McDermott, Law Offices of E. Patrick McDermott LLC, Annapolis, MD, for Plaintiff.

Carol Connor Flowe, Arent Fox Kintner Plotkin and Kahn PLLC, Washington, DC, for Defendants.

### MEMORANDUM

BLAKE, District Judge.

Now pending before the court is a motion for class certification, submitted by the plaintiff, Dan C. Tootle. The defendants oppose this motion. The issues in this motion have been briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the motion for class certification will be denied, and count V of the plaintiff's third amended complaint will be dismissed for failure to state a claim upon which relief can be granted.

### BACKGROUND

Dan Tootle was employed by the defendant, ARINC, Inc. ("ARINC"), from September 16, 1996 through March 2, 2002, when he was terminated. The motion for class certification involves ARINC's conversion from a defined benefit pension plan to a cash balance pension plan. Prior to 1999, ARINC

offered its employees a defined benefit plan, in which employees were entitled to a fixed monthly payment from an annuity upon their retirement. The annuity payment was calculated based on two variables-the employee's years of service and a percentage of his highest three consecutive years of salary within the ten years preceding retirement. Effective January 1, 1999, ARINC converted to a cash balance plan. Under this plan each employee maintains a hypothetical account, which receives annual credits based on two variables-a percentage of the employee's current salary and an interest credit at a guaranteed interest rate.[1] A retiree has the option of receiving an annuity or taking a lump sum payment.

All employees who were eligible to participate in the existing pension plan at the time of the conversion and who were transferred to the new plan received initial credits to their cash balance accounts equal to the lump sum value of the benefits they had accrued under the existing plan, as well as bonus "transition credits."[2] A group of almost 300 employees were offered a choice between continuing to accrue benefits under the defined benefit plan, or switching and accruing future benefits under the new cash balance plan.[3] The defendants state that only employees who were "vested" participants under the existing pension plan (meaning they had at least five years of service under the plan), and who were either 55 years old or had 25 or more years of service under the plan, were eligible for this option.[4] (Defs.' Opp. Mem. at 6, 7, 18–20.) Tootle suggests that all employees over the age of 55 were offered the choice, regardless of their years of service under the plan.[5] (Pl.'s Reply at Ex. 1, Tootle Aff., at ¶ 8–9.)

Tootle was offered the choice, and agreed to switch from the defined benefit plan to the cash balance plan. When he was terminated from ARINC in March 2002, Tootle elected to take a lump-sum distribution of $94,772.24 for his accrued benefits under the cash balance plan. An actuary for ARINC has calculated that if Tootle had remained under the defined benefit plan until his termination, he would have been entitled to a lump-sum equivalent of $80,438.42 on March 2, 2002.[6] (Defs.' Opp. Mem. at Ex. 2, Shaak Aff., at ¶ 3–5.) The difference of over $14,000 in these two figures may be attributed in part to the transition credit of $11,466 which Tootle received when he switched to the cash balance plan.

Tootle brought this suit pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* He now seeks class certification for counts V, VI, and VII of his third amended complaint.[7]

1. Under ARINC's cash balance plan the percentage of an employee's current salary that is credited to the account each year, referred to as the "contribution credit," increases with the employee's age. For example, an employee under age 25 will receive a contribution credit of three percent of his salary, while an employee age 60 or over will receive a contribution credit of 16 percent of his salary. (Defs.' Opp. Mem. at Ex. 1, Attach. A, at § 8.02(a).)

2. Like the contribution credits, the transition credits were provided on terms that were favorable to older employees. Employees under age 54 received the transition credit over a period of two years, while employees age 54 received the credit over a one-year period, and employees 55 or older received the full transition credit immediately. (Defs.' Opp. Mem. at Ex. 1, Attach. A, at § 8.05(b).)

3. All other employees who had participated in the defined benefit plan were required to switch to the cash balance plan.

4. The text of the ARINC Incorporated Retirement Income Plan supports this contention. (Defs.' Opp. Mem. at Ex. 1, Attach. A, at §§ 3.07, 3.08.)

5. Tootle initially stated that only employees who had attained the age of 55 *and* had at least five years of service under the plan were offered this choice. (Pl.'s Mem. at 3, 9.)

6. If Tootle had remained under the defined benefit plan, he would not have been eligible for a lump-sum distribution, but instead would have received an annuity paying $707.97 per month beginning at age 65. The actuarial lump-sum equivalent of this annuity was calculated for purposes of comparison for this lawsuit. (Defs.' Opp. Mem. at Ex. 2, Shaak Aff., at ¶ 3–5.)

7. Tootle's complaint also contains several counts related to his own employment with ARINC, which are not the subject of the motion for class certification. Tootle alleges that he was terminated based on his age and in order to interfere

## ANALYSIS

■ Fed.R.Civ.P. 23 sets out the two-step process a court follows in determining whether to certify a proposed class. First, the class must satisfy the four prerequisites specified in Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. If those requirements are met, then the court will determine if the class fits into one of the categories outlined in Rule 23(b). *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir.2003). Tootle seeks certification of both proposed classes under Rule 23(b)(2), which requires that the defendants have "acted or refused to act on grounds generally applicable to the class," thus making injunctive relief "with respect to the class as a whole" an appropriate remedy.[8] The burden of establishing class status is on the party seeking class certification. *See Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir.2001).

### I.

In count V, Tootle moves for certification of the class of: "All ARINC Retirement Plan participants who have suffered age discrimination due to the conversion of the ARINC Retirement Income Plan from a final average formula to a cash balance plan on January 1, 1999." (Pl.'s Mem. at 8.) This claim alleges that ARINC's conversion from a defined benefit to a cash balance pension plan constituted unlawful age discrimination under ERISA, 29 U.S.C. § 1054(b)(1)(H)(i), because the manner in which accrued benefits are calculated under the new plan favors younger workers. (Third Am. Compl. at ¶ 57.)

### A.

The defendants first argue that this proposed class is based on an ADEA claim that Tootle previously withdrew from his own complaint. Tootle's original complaint, filed on April 14, 2003, included a count alleging that ARINC's conversion to the cash balance plan constituted unlawful age discrimination under the ADEA. That complaint also alleged a violation of ERISA's age discrimination provision in a separate count. On May 30, the defendants filed a motion to dismiss the ADEA count related to the conversion, arguing that Tootle had failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and that the statute of limitations already had run.[9] On June 24 the court granted a motion by the plaintiff to strike the allegations relating to this ADEA claim and therefore denied the defendants' motion to dismiss as moot. Tootle filed a charge with the EEOC for the ADEA claim on June 20, 2003, and he still is waiting for a response.

■ The defendants' argument misreads the complaint. Tootle's ADEA and ERISA age discrimination claims were brought under two complementary but independent statutory regimes. Although the ADEA claim requires administrative exhaustion with the EEOC, *see* 29 U.S.C. § 626(d), a plaintiff bringing an ERISA claim is only required to exhaust any administrative remedies provided under the benefits plan in question. *See Smith v. Sydnor*, 184 F.3d 356, 361 (4th Cir.1999). The defendants do not dispute Tootle's allegation that he has exhausted these internal remedies, and that it would be futile for other class members to appeal under the plan. *Cf. Stewart v. NYNEX Corp.*, 78 F.Supp.2d 172, 183 (S.D.N.Y.1999) (applying ERISA futility exception to excuse exhaustion by other beneficiaries, where one beneficiary's appeal had been denied on generally applicable grounds). There is no per se bar to a court

---

with his attainment of rights under ARINC's pension plans (Third Am. Compl. at ¶ 13–28, 47–55), and that subsequently he was not hired for another position with ARINC based on his age and to interfere with his attainment of rights under ARINC's pension plans (*id.* at ¶ 29–44, 47–55), and that both actions violated the ADEA and ERISA. Tootle also alleges that ARINC has engaged in a pattern or practice of age discrimination against its employees, in violation of the ADEA. (*Id.* at ¶ 45–46.)

8. In the alternative, Tootle seeks certification of the breach of fiduciary claims in counts VI and VII under Rule 23(b)(3), which requires that common questions of law or fact predominate.

9. Tootle had filed a charge with the EEOC on June 5, 2002, but it did not mention any allegations relating to the pension plan.

considering an ERISA age discrimination claim under these circumstances. *Cf. Campbell v. BankBoston, N.A.,* 206 F.Supp.2d 70, 78–79 (D.Mass.2002) (finding that the plaintiff's ADEA claim was barred by the statute of limitations and failure to exhaust with the EEOC, but proceeding to consider the plaintiff's parallel ERISA claim of age discrimination).

### B.

The defendants next argue that Tootle is not a member of the proposed class, because he has suffered no injury or age discrimination as a result of the conversion to the cash balance plan. The parties agree that Tootle received a lump-sum distribution of $94,772.24 for his accrued benefits under the cash balance plan as of his termination on March 2, 2002. The defendants argue that if Tootle had remained under the defined benefit plan, then as of March 2, 2002 he would have been entitled to benefits equivalent to a lump-sum distribution of only $80,438.42. Tootle does not dispute this figure. Because Tootle did not lose any money as a result of the conversion, the defendants argue that he is not a member of the proposed class and lacks standing to bring the claim.

Tootle responds that the date of his March 2002 termination is not the proper measuring point, because he was wrongfully terminated from his employment (as alleged under counts I and IV of his amended complaint). Tootle therefore suggests that the court should consider the accrued benefits that he would be entitled to if he were still employed by ARINC today. Tootle's response is difficult to evaluate at this stage in the proceedings, when the court has not had an opportunity to address the merits of his claims for unlawful termination. Even assuming that Tootle could prevail on these claims, and that he would be entitled to continuing pension contributions through the present, his accrued benefits under the cash balance plan still might be worth more than his benefits under the defined benefit plan would be. Neither party provides any information about what the benefit calculations would be as of today.

■ In any event, both the plaintiff and the defendants appear to be applying the wrong framework to analyze Tootle's alleged injury. The age discrimination provision under ERISA focuses on the rate of benefit accrual, not the amount of benefits received. *See* 29 U.S.C. § 1054(b)(1)(H)(i). Tootle's claim of injury under this provision would turn on whether his rate of benefit accrual declined as he aged and/or was lower relative to the rate for younger employees. I will assume this kind of age-related difference is claimed.

### C.

■ A class cannot be certified if the named plaintiff has failed to state a claim upon which relief can be granted. Where "all other similarly situated plaintiffs would likewise fail to state a claim," it is appropriate to deny class certification and to dismiss the claim. *See Boulware v. Crossland Mortgage Corp.,* 291 F.3d 261, 268 n. 4 (4th Cir. 2002). As explained below, for reasons generally applicable to the entire proposed class, Tootle has failed to state a claim under 29 U.S.C. § 1054(b)(1)(H)(i). His motion for class certification therefore must be denied and his claim must be dismissed.

A defined benefit plan violates ERISA if "an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i). Cash balance plans currently are regulated in the same manner as defined benefit plans under ERISA, and therefore are subject to this age discrimination provision. *See Esden v. Bank of Boston,* 229 F.3d 154, 158–59 (2d Cir.2000); *Cooper v. IBM Personal Pension Plan,* 274 F.Supp.2d 1010, 1021–22 (S.D.Ill.2003); *Eaton v. Onan Corp.,* 117 F.Supp.2d 812, 817 (S.D.Ind.2000). The theory that cash balance plans violate this provision is based on a series of premises.[10] For defined benefit plans, ERISA directs that accrued benefits are calculated in terms of "an annual benefit

---

**10.** Tootle does not reference any particular theory of age discrimination in his filings with the court, but this appears to be the prevailing theory and fits with Tootle's general allegations.

commencing at normal retirement age," 29 U.S.C. § 1002(23)(A), in other words in terms of a traditional annuity beginning at age 65. In order to apply this definition to a cash balance plan, the current hypothetical balance in an employee's account must be translated into the equivalent age–65 annuity that those sums could purchase.

The claim of age discrimination arises because money contributed to a younger employee will be worth more (when expressed as an annuity starting at age 65) than the same amount of money contributed to an older employee, because the contribution to the younger employee will have more years to accrue interest before normal retirement age. *See Campbell v. BankBoston, N.A.*, 327 F.3d 1, 9–10 (1st Cir.2003); *Cooper*, 274 F.Supp.2d at 1021; *Eaton*, 117 F.Supp.2d at 823–24.[11] Stated another way, if any employer contributes the same amount to an employee's cash balance account every year, the value of those annual benefits (when expressed as an annuity starting at age 65) decreases with every passing year. *See Cooper*, 274 F.Supp.2d at 1021–22.[12] This inevitably results in a declining benefit accrual rate as an employee ages, in apparent violation of ERISA. In other words, all cash balance plans per se violate the ERISA age discrimination provision, by virtue of their design. *See Eaton*, 117 F.Supp.2d at 814–15, 823 (noting that if this argument is accepted "it is likely that hundreds of cash balance plans with millions of participants will be deemed illegal").

The existing case law on this specific issue is sparse and divided. *Compare Cooper*, 274 F.Supp.2d at 1022 (finding violation of ERISA), *with Eaton*, 117 F.Supp.2d at 826 (finding no violation of ERISA); *see also Campbell*, 327 F.3d at 10 (noting problems with this theory of age discrimination). I

agree with Judge Hamilton's conclusion in *Eaton* that ERISA's age discrimination provisions do not bar all cash balance plans. First, the legislative history and statutory language provide strong evidence that this aspect of ERISA is not intended to protect workers until after they have attained normal retirement age. *See Eaton*, 117 F.Supp.2d at 826–29. Statutory headings in the text of the original enactment and in a parallel age discrimination provision in the Internal Revenue Code enacted at the same time both refer to accrual of benefits "beyond normal retirement age." *See id.* at 826 (citing 26 U.S.C. § 411(b)(1)(H) and Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, 100 Stat. 1874, 1975). Statements in the legislative history confirm that ERISA's age discrimination provisions were enacted to protect employees after normal retirement age. *See id.* at 827–29.

Even if the age discrimination provisions apply to employees prior to normal retirement age, employers should not be forced to calculate accrued benefits under a cash balance plan in terms of an age–65 annuity, as ERISA requires for traditional defined benefit plans. *See id.* at 829–834. Calculating accrued benefits in terms of an age–65 annuity is not the only option available under ERISA. For plans which involve individual accounts, such as traditional defined contribution plans, accrued benefits are calculated as "the balance of the individual's account." 29 U.S.C. § 1002(23)(B). ERISA's prohibition on age discrimination for defined contribution plans also differs slightly, stating that a plan satisfies the requirement as long as "allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(2)(A). These ERISA provisions provide a better measure

---

**11.** In *Eaton* the court calculated that a 25–year–old employee under that employer's cash balance plan would accrue an age–65 annuity of $3,025.56 in one year, while a 45–year–old employee earning the same salary would accrue an age–65 annuity of only $565.22 in that same year. *Eaton*, 117 F.Supp.2d at 823–24. Expressed as a ratio of the age–65 annuity benefits accrued to annual salary earned, the 25–year old employee has a 10.09% benefit accrual rate,

while the 45–year old employee has a 1.88% benefit accrual rate. *Id.* at 824.

**12.** In *Cooper* the court calculated that a 49–year–old employee with 20 years of service would accrue $8,093 in age–65 annuity benefits in 2000 under that employer's cash balance plan, an additional $622 in benefits in 2001, and only $282 per year in benefits by 2010. *Cooper*, 274 F.Supp.2d at 1021–22.

for examining possible age discrimination in cash balance plans.

Applying the ERISA provisions designed for traditional defined benefit plans to cash balance plans could lead to illogical results, as illustrated in this case. On its face, the terms of the ARINC cash balance plan appear to favor older employees. All employees are entitled to regular interest credits at the same guaranteed rate, the regular contribution credits are based on a percentage of an employee's salary that increases with age, and the transition credits were provided on terms slightly more favorable to older employees. The potential claim of age discrimination arises only by applying a definition for accrued benefits which does not fit with the way cash balance plans are structured. The more sensible approach is to measure benefit accrual under cash balance plans by examining the rate at which amounts are allocated and the changes over time in an individual's account balance, as the ERISA provisions designed for traditional defined contribution plans would direct. Judge Hamilton followed a similar approach in *Eaton,* adopting the defendant's suggestion to measure benefit accrual by the changes in an individual's account balance from year to year. *See* 117 F.Supp.2d at 832–33. Applying either the ERISA provisions for defined contribution plans or the approach taken in *Eaton,* ARINC's cash balance plan does not discriminate against employees because of their age.

Tootle has failed to allege any other theory of age discrimination related to the pension plan conversion. Accordingly, the motion for class certification will be denied and this count will be dismissed for failure to state a claim under 29 U.S.C. § 1054(b)(1)(H)(i).[13]

## II.

■ In counts VI and VII, Tootle moves for certification of the class of: "All participants who were provided a choice between remaining in the ARINC Retirement Plan that provided for a final average pay formula or electing the cash balance plan formula." (Pl.'s Mem. at 15.) These claims allege that the defendants breached their fiduciary duties under 29 U.S.C. §§ 1104 and 1105 by making material misrepresentations and omissions to those employees who were offered a choice between the two pension plans at the time of the conversion.[14] The four required elements for an ERISA breach of fiduciary duty claim based on a misrepresentation are: (1) the defendant was an ERISA fiduciary acting as a fiduciary, (2) the defendant made a misrepresentation, (3) the misrepresentation was material, and (4) the plaintiff detrimentally relied on the misrepresentation. *See, e.g., Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.,* 334 F.3d 365, 384 (3d Cir.2003); *James v. Pirelli Armstrong Tire Corp.,* 305 F.3d 439, 449 (6th Cir.2002); *Wiseman v. First Citizens Bank & Trust Co.,* 215 F.R.D. 507, 510 (W.D.N.C.2003).

## A.

The defendants first argue that Tootle is not an appropriate class representative and lacks standing to bring the claims for breach of fiduciary duty, because he was not eligible to choose between the two pension plans. Tootle states that all employees 55 years or older were offered this choice, while the defendants argue that only employees who were "vested" participants under the pension plan were eligible. This distinction would appear to be critical, because although both parties agree that Tootle was over 55 years old on the transition date of December 31, 1998, he had no more than three years of service under the plan and therefore was not a "vested" participant. Tootle has submitted an affidavit stating that he was offered the choice (Pl.'s Reply at Ex. 1, Tootle Aff., at ¶ 4–7, 10), and has produced a "Retirement Plan Decision Form" dated August 13, 1998 with his signature witnessed by ARINC em-

13. The court notes that to the extent the plaintiff's previously withdrawn ADEA claim would rest on a similar theory under 29 U.S.C. § 623(i)(1)(A), it likewise would be subject to dismissal for failure to state a claim.

14. Count VI is brought against ARINC, the two pension plans, and six individual members of the pension committee. (Third Am. Compl. at ¶ 60–75.) Count VII is brought against ARINC only, and alleges that ARINC failed to monitor the performance of the six named individual members of the pension committee. (*Id.* at ¶ 76–77.)

ployee Carol Ann Parker, which appears to confirm this. (*Id.* at Attach. A.) The defendants have not denied that Tootle was in fact offered the option between the two plans. If Tootle was offered the choice in error, as the defendants apparently suggest, this raises questions regarding Tootle's own allegation of detrimental reliance, and whether his claims would be typical of the entire class of employees who were offered the choice, whether in error or not.[15]

Although the defendants do not raise the issue here, their argument about whether Tootle has been harmed by the conversion to the cash balance plan also might bar his own claims for breach of fiduciary duty. It does not appear that Tootle suffered any tangible injuries from his decision to switch to the cash balance plan. If the appropriate point of analysis is the date of Tootle's termination, on March 2, 2002, then the defendants' actuarial analysis establishes that he did not suffer any loss in benefits. Tootle suggests that if he was still employed by ARINC, then he would have been better off economically if he had remained in the defined benefit plan. (Pl.'s Reply at 6; *id.* at Ex. 1, Tootle Aff., at ¶ 11.) Neither party has provided the court with the appropriate statistical analysis to prove or disprove this claim. If Tootle did not suffer any loss in benefits or other tangible injuries by switching to the cash balance plan, then he cannot establish the fourth element of detrimental reliance. *Cf. Burstein,* 334 F.3d at 368 (retirees sought benefits allegedly accrued under retirement plan); *James,* 305 F.3d at 443–45 (employees had higher out-of-pockets costs than represented); *Wiseman v. First Citizens Bank & Trust Co.,* 212 F.R.D. 482, 484–85 (W.D.N.C. 2003) (employees' retirement accounts lost value).

Both of these arguments raise disputed factual questions about Tootle's ability to pursue the claims for breach of fiduciary duty, which could be addressed on a motion for summary judgment as to his own claims. Tootle's ability to pursue an ERISA claim for breach of fiduciary duty is not necessarily fatal to the class claim, however, because another plaintiff might be substituted as the class representative. *Cf. Davis v. Bethlehem Steel,* 600 F.Supp. 1312, 1323 (D.Md.1985); *Dameron v. Sinai Hosp. of Baltimore, Inc.,* 595 F.Supp. 1404, 1409 (D.Md.1984) (citing *Int'l Woodworkers v. Chesapeake Bay Plywood,* 659 F.2d 1259, 1270 (4th Cir.1981)). Tootle has requested leave to substitute another plaintiff, should the court determine that he is not a member of the proposed class or is not an appropriate class representative. The court does not need to consider this request, however, because the motion for class certification fails on other grounds which cannot be cured by substituting another plaintiff.

### B.

The defendants argue that the fiduciary claims are not suitable for class resolution, and specifically that the Rule 23 requirements of commonality and typicality are not met, because of the need for individualized proof regarding the contents of the alleged misrepresentations and omissions and the class members' detrimental reliance. Rule 23(a) requires that the members of a proposed class present common questions of law or fact, and that the claims or defenses of the proposed class representative are typical of the class. "The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir.1998)

---

**15.** Tootle recently filed a motion to supplement his original motion for class certification in order to submit another copy of the Retirement Plan Decision Form, which appears to be identical to the copy previously submitted. The motion to supplement will be denied, because the attached material already has been submitted. The defendants responded to the plaintiff's motion to supplement with an opposition memorandum that raises new facts and arguments. Because Too-

tle's supplemental motion did not raise any new issues, the defendants' response can only be considered as a surreply to the plaintiff's original motion for class certification. Local Rule 105.2.a prohibits the filing of surreply memoranda unless otherwise ordered, and this court did not order the defendants to file a surreply. The defendants' opposition will not be considered by the court.

(quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir.1997)).

■ The claims for breach of fiduciary duty are based on material misrepresentations and omissions allegedly made by the defendants for the purpose of convincing those employees who had a choice between the two pension plans to convert to the cash balance plan. Under ERISA, fiduciaries may not make material misrepresentations to beneficiaries, or provide incomplete, inconsistent, or contradictory disclosures that misinform beneficiaries. *See Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371, 380–81 (4th Cir.2001). In some circumstances ERISA fiduciaries have an affirmative obligation to provide material information to beneficiaries. *See id.* As stated, the four required elements for an ERISA fiduciary duty claim based on a misrepresentation are: (1) the defendant was an ERISA fiduciary acting as a fiduciary, (2) the defendant made a misrepresentation, (3) the misrepresentation was material, and (4) the plaintiff detrimentally relied on the misrepresentation. *See, e.g., Burstein,* 334 F.3d at 384; *James,* 305 F.3d at 449; *Wiseman,* 215 F.R.D. at 510. The claims stated by Tootle rely heavily on alleged omissions, stating that the defendants failed to share material information with employees which was available to the defendants. Tootle cites to internal communications among members of the pension committee, ARINC management, and outside consultants which contain information on the relative advantages and disadvantages of the two pension plans. (Pl.'s Mem. at 10–14.)

The defendants first argue that the commonality and typicality requirements are not met because the fiduciary claims would require individualized proof regarding the contents of the alleged misrepresentations and omissions made to each class member. The defendants state that the information disseminated to ARINC employees regarding the cash balance plan included oral, non-uniform communications made in group and one-on-one meetings. (Defs.' Opp. Mem. at 22; *id.* at Ex. 1, Manigold Aff., at ¶ 9–10.) Tootle does not dispute that such meetings occurred, but counters that his claims do not rely on any oral statements.[16] The court nonetheless would need to evaluate any oral representations made to class members attending these meetings-which could vary significantly among the class members-to determine if these representations are sufficient to overcome any alleged omissions in the written materials on which Tootle relies. Several courts have concluded that ERISA fiduciary claims based on oral representations are not suitable for class certification precisely because they require such individualized proof, and thus fail the commonality and typicality requirements. *See Gesell v. Commonwealth Edison Co.*, 216 F.R.D. 616, 623–25 (C.D.Ill. 2003); *Mick v. Ravenswood Aluminum Corp.*, 178 F.R.D. 90, 92–94 (S.D.W.Va.1998); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir.1998) (holding that district court abused its discretion in certifying class for ERISA estoppel claim where plaintiffs relied on differing oral and written representations). Citing favorably to *Sprague,* the Fourth Circuit has reversed a grant of class certification in a similar context, in which the plaintiffs alleged state law claims for breach of fiduciary duty, fraud, and misrepresentation based on varying oral representations. *See Broussard,* 155 F.3d at 340–41 (noting that such claims fail the commonality and typicality requirements).

The defendants' second argument is that the fiduciary claims lack commonality or typicality because class members would have to show individual detrimental reliance, the fourth element for such a claim.[17] Several

---

16. Although this point is not clear from reading Tootle's complaint, in his memorandum Tootle relies exclusively on various written communications that apparently were distributed uniformly to ARINC employees. (Pl.'s Mem. at 4–6, 10–14.)

17. Tootle argues that his fiduciary claims will not require an individualized showing of detrimental reliance, but the only contrary authority that he has cited is an unpublished district court decision noting that the Second Circuit had not decided whether a plaintiff claiming that a plan's summary description was misleading must make an individualized showing of detrimental reliance. *See Amara v. CIGNA Corp.*, 2002 WL 31993224, at *3 n. 4 (D.Conn. Dec.20, 2002). The *Amara* court certified a class on the question of whether the summary description was misleading, but noted that if an individualized showing of detrimental reliance would be required

courts have found that ERISA fiduciary claims based on alleged misrepresentations are not suitable for class certification, because the element of detrimental reliance requires individualized proof. *See Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 457 (11th Cir.1996) (per curiam); *Wiseman,* 215 F.R.D. at 510–11.[18] In two recent cases involving similar state law claims for breach of fiduciary duty, fraud, and misrepresentation, the Fourth Circuit reversed grants of class certification. The Fourth Circuit determined that the claims were not suitable for class treatment, in part because substantial individualized fact-finding would be required in order for the class members to demonstrate actual and reasonable reliance. *See Gunnells,* 348 F.3d at 434–35; *Broussard,* 155 F.3d at 341–42.

There is one respect in which Tootle's claims are different from the claims that were denied class certification in the cases cited above-Tootle relies primarily on alleged *omissions* rather than *misrepresentations.* It stands to reason that such a claim also should require some showing of causation or detrimental reliance, necessitating individualized proof. *See Willett v. Blue Cross & Blue Shield of Ala.,* 953 F.2d 1335, 1343 (11th Cir.1992) (noting that a breach of fiduciary duty under ERISA must be the proximate cause of claimed losses, in a case involving failure to notify); *see also Kamler v. H/N Telecomm. Servs., Inc.,* 305 F.3d 672, 681 (7th Cir.2002) ("Finally, although not explicitly indicated by the prior caselaw, the plaintiff must allege that the breach of fiduciary duty caused some harm to him or her that can be remedied."); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W. v. Skinner Engine Co.,* 188 F.3d 130, 148 (3d Cir.1999) (noting that a plaintiff alleging fiduciary breach under ERISA based on misrepresentations or omissions must prove a resulting harm).

The factual differences among the class members in this case are significant enough that the claims for breach of fiduciary duty fail to meet the commonality and typicality requirements under Rule 23(a). The fourth element of reliance or causation necessarily will require individualized inquiries of the class members regarding the basis for their decisions whether or not to convert to the cash balance plan. If the defendants are correct that oral representations were made to employees in group and individual meetings, which Tootle does not dispute, this also will require individualized inquiries of the class members as to the information that they received. Resolving the fiduciary duty claims thus will require an individualized showing regarding each plaintiff's acquisition of information about the new cash balance plan and his reliance on that information. *Cf. Wiseman,* 215 F.R.D. at 510–11. Although the proposed class members share a common legal theory, these individual factual differences are significant, will predominate over common issues, and likely will be dispositive of their claims.

Tootle offers a second theory of breach of fiduciary duty, which he states does not require proof of individual reliance. Tootle broadly alleges that the defendants acted in the interests of ARINC rather than the plan beneficiaries, and thus violated their general fiduciary duties under ERISA to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive pur-

---

then the court might revisit class certification. *See id.*

18. In the similar context of estoppel claims under ERISA, where detrimental reliance is a required element, decisions are split on the question of class certification. *Compare Jones v. Am. Gen. Life & Accident Ins. Co.,* 213 F.R.D. 689, 699–701 (S.D.Ga.2002) (granting class certification, noting that subclasses and individual hearings could be used), *and In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 464–67 (E.D.Pa.2000) (granting conditional class certification), *with Sprague,* 133 F.3d at 398 (reversing grant of class certification, based in part on the fact that plaintiffs would have to show individual detrimental reliance), *and United Steelworkers of Am., AFL–CIO–CLC v. Ivaco, Inc.,* 216 F.R.D. 693, 697–98 (N.D.Ga.2002) (denying class certification, based on the necessity of establishing individual detrimental reliance). *See also Jensen v. SIPCO, Inc.,* 38 F.3d 945, 953 (8th Cir.1994) (suggesting that ERISA equitable estoppel claim would not be suitable for class-wide relief, because it would require "factual precision" regarding whether a material misrepresentation was made on which a beneficiary reasonably relied to his detriment).

pose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1) and (a)(1)(A)(i). To the extent that this theory of liability rests on alleged misrepresentations and omissions, the analysis is the same.[19] Tootle's filings also suggest a more general theory that the decision to convert to a cash balance plan itself was motivated by ARINC's own financial interests. However, the fiduciary duties under ERISA generally are not triggered by decisions to amend or convert a benefits plan. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443–45, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (holding that plan sponsors are not subject to fiduciary duties when adopting, modifying, or terminating a pension plan); *see also Noorily v. Thomas & Betts Corp.*, 188 F.3d 153, 158 (3d Cir.1999) ("[A]n employer can create a plan that furthers its business interests, and it can act according to these interests in amending or terminating the plan.").[20] Tootle thus has failed to state a claim for breach of fiduciary duty on any theory that does not involve reliance on alleged misrepresentations or omissions.

The motion for class certification must be denied, because the proposed class does not meet the commonality or typicality requirements of Rule 23(a).

### III.

In sum, count V of the plaintiff's third amended complaint will be dismissed for failure to state a claim upon which relief can be granted, and the plaintiff's motion for class certification as to counts V, VI, and VII will be denied. Tootle's individual claims in counts VI and VII for breach of fiduciary duty under ERISA remain pending. Also pending are Tootle's individual claims in counts I, II, and IV, alleging that Tootle was terminated and subsequently was not hired for another position with ARINC, in violation of the ADEA and ERISA. Also still pending is Tootle's claim in Count III that ARINC engaged in a pattern or practice of age discrimination, in violation of the ADEA. One additional party plaintiff, Richard Cleary, has filed a written consent pursuant to 29 U.S.C. §§ 216(b), 626(b) to opt-in to this pattern or practice claim.[21]

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. plaintiff's motion to supplement his motion for class certification (docket no. 57) is **DENIED**;

2. plaintiff's motion for class certification (docket no. 40) is **DENIED**;

3. plaintiff's motion for court supervision of the notification to putative class members of opt-in rights and deadline (docket no. 31) is **DENIED** without prejudice; and

4. copies of this Order and the accompanying Memorandum shall be sent to counsel of record.

**19.** In his reply, Tootle points to his general allegations that ARINC and the six individual members of the pension committee favored the interests of ARINC over those of Tootle and other employees (Third Am. Compl. at ¶ 65, 70–72), but the only conduct that he can point to in support of these general allegations are the same alleged omissions and misrepresentations. (Reply at 2–3, 4–5.)

**20.** In an unpublished decision, one district court has held that an employee could not challenge the terms of his employer's conversion to a cash balance plan as a breach of fiduciary duty under ERISA, because the employer was not acting as a fiduciary. *See Corcoran v. Bell Atl. Corp.*, 1997 WL 602859, at *9 (E.D.Pa. Sept.23, 1997).

**21.** On October 21, 2003, this court issued a scheduling order setting January 15, 2004 as the deadline for ADEA written consents to be filed with the court. Tootle previously had filed a motion requesting court supervision of the notification of putative ADEA class members, opposed by the defendants, which remains pending on the docket. This motion appears to be moot and will be denied without prejudice at this time.