**Larry DRUTIS, Harold E. Parker, Joe Tkacz and John Wayne Simpson Plaintiffs**

v.

**QUEBECOR WORLD (USA), INC. Defendant.**

**No. 04–269–KSF.**

United States District Court, E.D. Kentucky.

Sept. 25, 2006.

---

Charles William Arnold, Lexington, KY, for Plaintiffs.

Carol Connor Flowe, Gretchen Ann Dixon, Arent Fox PLLC, Washington, DC, Jack B. Harrison, Frost Brown Todd LLC, Cincinnati, OH, Adam R. Kegley, Frost

Brown Todd LLC, Lexington, KY, for Defendant.

### OPINION AND ORDER

FORESTER, Senior District Judge.

This matter is before the Court on cross motions for summary judgment by Plaintiffs [DE # 57] and the Defendant [DE# 58]. Having been fully briefed, these motions are ripe for review.

## I. OPINION

The four Plaintiffs claim that a change in their pension plan from a traditional defined benefit plan to a cash balance plan violated § 204(b)(1)(H), the anti-age discrimination provision of the Employee Retirement Income Security Act ("ERISA").[1] The relevant facts are not in dispute. The only dispute concerns the interpretation of the statute and its application to these facts. It is the Opinion of this Court that the change in pension plans did not violate ERISA's anti-discrimination provision, and Defendant is entitled to judgment as a matter of law.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Each of the four Plaintiffs was previously employed by Rand McNally Book & Media Services ("Rand McNally Book") and participated in the Rand McNally & Company Pension Plan ("Rand McNally Plan"), a traditional defined benefit plan. On January 17, 1997, World Color Press, Inc. ("World Color") purchased Rand McNally Book, and the Plaintiffs became employees of World Color. The pension benefits of the employees were transferred to the World Color Press Cash Balance Plan ("World Color Plan"). Each participant in the World Color Plan was credited with a Transition Balance that was equal to the amount they would have been paid if they had taken a lump sum distribution of their Rand McNally Plan benefit on January 16, 1997. This sum was the full actuarial value of the employee's existing accrued benefit. Each month, the Transition Account was credited with interest at the rate payable on one-year U.S. Treasury bills as of December 31 of the preceding year. Additionally, each World Color Plan participant had a Future Service Account in which they received monthly credits equal to 4 percent of their monthly compensation plus interest at the one-year Treasury bill rate, with a minimum of 3 percent interest.

The World Color Plan also had a special "grandfather" provision applicable to those employees who: (1) had an accrued benefit under the Rand McNally Plan on January 16, 1997; (2) were 55 years old on or before that date; and (3) had at least five years of vesting service as of that date. These "grandfathered" participants could choose a retirement benefit that was the greater of: (a) the benefit they would have received under the Rand McNally Plan if they had continued to participate until their retirement date, or (b) their cash balance under the World Color Plan.

Plaintiffs Larry Drutis and Joseph Tkacz retired from World Color on December 31, 1998 and took the distribution of their benefits from the World Color Plan at that time. They both met all of the "grandfather" requirements, and they

---

1. Plaintiffs initially claimed that the opening account balances under the new plan were not the actuarial equivalent of their accrued benefits under the former plan (Complaint, Count I), but their expert witness testified to the contrary (Poulin Dep. At 80, 84). Accordingly, they have withdrawn Count I [DE # 62 at 11]. Plaintiffs also filed claims against Rand McNally, but sought voluntary dismissal of Rand McNally at the conclusion of discovery [DE # 61]. Rand McNally was dismissed with prejudice [DE # 63].

both chose to receive their benefits calculated as if they had continued in the Rand McNally Plan until their retirement date. They both also were younger than 65 when they retired.

In 1999, a subsidiary of Quebecor Printing, Inc. merged with World Color and the resulting entity is Quebecor World (USA), Inc. ("Quebecor"). In December 2000 the World Color Plan was merged into the Quebecor World Pension Plan, which is not a cash balance plan. After that date, the World Color Plan ceased to exist. Accordingly, this case concerns only the World Color Plan from January 17, 1997 through December 31, 2000.

Plaintiff Harold Parker became disabled August 5, 1996 and retired on disability effective January 31, 1997. He is younger than 65, and has not elected to receive his retirement benefits. Plaintiff John Simpson is currently an employee of Quebecor and has not received any distribution of his retirement benefits. He also is younger than 65.

In support of their claim of age discrimination, Plaintiffs offered the testimony of Claude Poulin, an actuary. Mr. Poulin testified that he has attended the annual enrolled actuaries meetings in Washington, D.C. since 1976 (Poulin Dep. p. 16). He could not identify any literature presented at these meetings that would support his opinion. In fact, he said the actuaries attending the meetings "would disagree with [his] opinion." *Id.* at 17. He admitted that the American Academy of Actuaries has "taken the position that cash balance plans are not inherently age discriminatory." *Id.* at 134, 139. Nonetheless, Mr. Poulln's Report states that the World Color Plan "rates of benefit accrual" decline "with each year of advancing age" and these reductions "are a clear violation of Section 204(b)(1)(H) of ERISA...." [DE # 57, Exhibit D].

## III. BACKGROUND ON APPLICABLE PENSION PLANS

### A. *Defined Benefit and Defined Contribution Plans Generally*

Two types of pension plans are recognized by federal law: defined benefit plans and defined contribution plans. *See generally, Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). Defined benefit plans entitle the participant upon retirement to a fixed periodic payment from a general pool of assets provided by the employer. The employer "typically bears the entire investment risk and ... must cover any underfunding as the result of a shortfall that may occur from the plan's investments." *Id.* at 439, 119 S.Ct. 755. The amount of the "fixed payment" typically is based on a formula including the employee's highest recent earnings and the number of years of service. In a defined benefit plan, the "accrued benefit" is defined as an amount "expressed in the form of an annual benefit commencing at normal retirement age." ERISA § 3(23)(A).

Defined contribution plans, on the other hand, establish an individual account for each participant. The employer contributes periodically to the account, and the employee may be able to supplement those contributions. The benefit at the time of retirement is a function of the balance in the account, consisting of the contributions and the interest or investment earnings on the contributions over the employee's career. The retirement benefit is not a "fixed" amount, but varies depending upon the amount accumulated in the account over time. The participant bears the investment risk.

Cash balance plans, by law, are defined benefit plans, but they function more like defined contribution plans. *See Internal*

*Revenue Service Notice* 96–8, 1996–1 C.B. 359 ("Notice 96–8"); *Laurent v. PriceWaterhouseCoopers,* 448 F.Supp.2d 537, 538 (S.D.N.Y.2006). Each participant has a hypothetical account to which the employer imputes value through "credits," typically equal to a percentage of compensation, and interest credits based on a specified benchmark, such as the annual yield on one-year U.S. Treasury bills. The interest credits are not determined by the actual investment yield on the plan's assets; instead, if the actual investment yield falls below the interest rate guaranteed by the plan, the employer is required to make up the difference. To determine an employee's "accrued benefit" under a cash balance plan, an employer is required to provide "credits" for not only the current year of interest but also credits for all years until the employee's normal retirement age. Thus, a participant's account is said to be "front loaded" with estimated interest. *Id.* at 544–45. If the employee retires and takes a distribution of his pension before the normal retirement age, the hypothetical account balance is discounted back to its present value. *See Cooper v. IBM Personal Pension Plan,* 457 F.3d 636, 641 (7th Cir. 2006)

**B. *The Rand McNally and World Color Plans***

The Rand McNally Plan was a traditional defined benefit plan that provided a life annuity at the normal retirement age of 65 based on the number of years of service and compensation. Employees with at least fifteen years of service could choose to receive a distribution at age 55, either in the form of an annuity or a lump sum if their benefit was at least $10,000.

The World Color Plan was a cash balance plan consisting of a Transition Balance equal to the actuarial equivalent of the benefit earned under the Rand McNally Plan as of January 16, 1997, plus credits for interest on that amount, and a Future Service Account in which each participant received credit each month for 4 percent of his or her monthly compensation, plus interest at the one-year Treasury bill rate or a minimum of 3 percent. Each employee received the same 4 percent of compensation credit and rate of interest credit whether the employee was 25, 45, 55 or any other age.

## IV. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. R. 56(c); *U.S. v. One TRW, Model M14, 7.62 Caliber Rifle,* 441 F.3d 416, 417 (6th Cir.2006). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Browning v. Department of Army,* 436 F.3d 692 (6th Cir.2006).

### B. Standing

#### 1. *Plaintiffs Drutis and Tkacz*

■ For this Court to have jurisdiction under Article III of the United States Constitution, a plaintiff must allege an actual case or controversy.

To satisfy this "case or controversy" requirement, "a plaintiff must establish three elements: (1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the con-

duct at issue—the injury must be fairly traceable to the defendant's action; and (3)[a] likelihood that the injury would be redressed by a favorable decision of the Court."

*Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224, AFL–CIO v. Airborne, Inc.*, 332 F.3d 983, 987 (6th Cir. 2003), quoting *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir.2002). "Injury-in-fact means that the plaintiff has 'sustained or is in immediate danger of sustaining some direct injury.'" *Id.*, quoting *Massachusetts v. Mellon*, 262 U.S. 447, 448, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

Quebecor argues that Plaintiffs Drutis and Tkacz lack standing to bring this action because they have no injury. As mentioned above, persons who were grandfathered had a choice upon retirement of having their pension benefits determined by the greater of: (a) the benefit they would have received under the Rand McNally Plan as if they had continued to participate until their retirement date, or (b) their cash balance under the World Color Plan. Plaintiffs' expert, Claude Poulin, admitted that, with such a grandfather provision, a grandfathered employee would not "have been harmed by becoming a participant in the World color plan." (Poulin Dep. P. 120–121). He appeared unaware that Drutis and Tkacz were grandfathered employees (*Id.* at 121–122).

In the present case, Plaintiffs Drutis and Tkacz specifically chose that their pension benefits were to be determined by the benefit they would have received under the Rand McNally Plan as if they had continued to participate until their retirement date, taking into consideration their additional service and interest under the World Color Plan. When plaintiffs have a choice between the greater of their pension benefits calculated under their old defined benefit plan or their new cash balance plan, and they choose the old plan, they have suffered no injury as a result of the company's conversion to the new cash balance plan. Accordingly, Plaintiffs Drutis and Tkacz have no injury in fact, and this Court lacks jurisdiction to consider their claims of age discrimination.

In *Goldman v. First National Bank of Boston*, 1992 WL 142031 (D.Mass.), the plaintiff claimed age discrimination as a result of changes in his pension plan. The court noted, however, that the plaintiff was given the choice of the greater benefits under the old or new plan. "Therefore, any changes in the retirement plan cannot support an inference of age discrimination." *Id.* at *2.

2. *Plaintiffs Simpson and Parker*

■ There is persuasive authority that ERISA's anti-age discrimination provision does not apply to persons who are not already over the normal retirement age of 65 and continuing to work. The most recent case to consider this issue is *Laurent v. PriceWaterhouseCoopers*, 448 F.Supp.2d 537, 552–53 (S.D.N.Y.2006), where the court held:

> First, the ERISA anti-discrimination provision does not apply to employees who have not yet reached normal retirement age. I agree with the majority view that the legislative history and statutory language of ERISA provide strong evidence that the age discrimination provision was not intended to protect employees until after they reach normal retirement age.

That court found "particularly persuasive that the statutory headings in the parallel provision in the I.R.C. refer to the accrual of benefits 'beyond normal retirement age' as being the subject of the anti-discrimination provision." *Id.*

The court in *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents,* 441 F.Supp.2d 516 (S.D.N.Y.2006), discussed at length the legislative history leading up to the anti-age discrimination provision in issue. It noted that the amendment to section 204(b)(1)(H) of ERISA was enacted as part of the Omnibus Budget Reconciliation Act of 1986 ("OBRA of 1986"), Pub.L. No. 99–509, § 9202(a)(2), 100 Stat.1975, and that the internal Revenue Code was similarly amended. *Id.* § 9202(b)(3), 100 Stat. At 1977. *Hirt* at 544–45. Section 9202 of OBRA was headed "Benefit Accrual Beyond Normal Retirement Age," and the parallel amendment to the internal Revenue code was entitled "Continued Accrual Beyond Normal Retirement Age." Statutory headings that are consistent with the legislative history may be used to determine Congressional intent. *Barnes v. Oddo,* 219 F.2d 137, 142 (2d Cir.1955). "The Conference Report made clear also that 'the rules preventing the reduction . . . of benefit accruals on account of the attainment of age are not intended to apply . . . for employees who have not attained normal retirement age.'" *Id.,* quoting H.R. rep. 99–1012, at 367 (1986) (Conf. Rep.), 131 Cong. Rec. 18,868 (July 11, 1985). The court noted that, after the statute itself, the conference report is the most "authoritative and reliable material of legislative history." *Id.* at 545–46. The *Hirt* court concluded that "the statutory amendment was intended to prevent discrimination against employees who wished to work past their normal retirement age without compromising their ability to continue earning pension benefits." *Id.* at 544–45.

Several other courts have reached the same conclusion. *Tootle v. ARINC, Inc.,* 222 F.R.D. 88, 93 (D.Md.2004) ("First, the legislative history and statutory language provide strong evidence that this aspect of ERISA is not intended to protect workers until after they have attained normal retirement age."); *Eaton v. Onan Corporation,* 117 F.Supp.2d 812, 815 (S.D.Ind.2000) ("First the legislative history shows that these specific prohibitions do not apply at all to employees who have not yet reached normal retirement age."); *Campbell v. BankBoston, N.A.,* 327 F.3d 1, 10 (1st Cir.2003) ("First, the ERISA age discrimination provision may not even apply to workers younger than the age of normal retirement.").

Under this interpretation of the statute, it is the Opinion of this Court that none of the Plaintiffs have standing to assert a claim of age discrimination. In response to these authorities, Plaintiffs rely heavily on the decision in *Cooper v. IBM Personal Pension Plan,* 274 F.Supp.2d 1010 (S.D.Ill. 2003) [DE # 62 p.4]. Unfortunately for Plaintiffs, that decision was recently reversed by the Seventh Circuit. *Cooper v. IBM Personal Pension Plan,* 457 F.3d 636 (7th Cir.2006). Even if the Plaintiffs were to have standing, however, their claims are without merit.

**C. The Conversion From the Rand McNally Traditional Defined Benefit Plan to the World Color Cash Balance Plan Did Not Violate ERISA's Anti-age Discrimination Provision**

*1. Review of Recent Decisions.*

As employers began converting their pension plans from traditional defined benefit plans to cash balance plans, employees initiated a flurry of litigation claiming various violations of ERISA. *See Eaton v. Onan Corp.,* 117 F.Supp.2d 812, 818 (S.D.Ind.2000); *Register v. PNC Financial Services Group, Inc.,* 2005 WL 3120268 at *1 (E.D.Pa.2005). The Plaintiffs in this case raise one of the more recent attacks, that the conversion of their plan

violated ERISA's prohibition against age discrimination. Their argument is virtually the same as the plaintiffs in the cases below.

The Seventh Circuit recently became the first Circuit Court of Appeals to decide this question in *Cooper v. IBM Personal Pension Plan*, 457 F.3d 636 (7th Cir.2006). Cooper brought a class action claiming that IBM's cash balance pension plan, which replaced a traditional defined benefit plan, violated the anti-age discrimination provision of ERISA. The district court agreed with the plaintiffs. *Cooper v. IBM Personal Pension Plan*, 274 F.Supp.2d 1010 (S.D.Ill.2003). The Seventh Circuit strongly disagreed. *Cooper*, 457 F.3d at 638. Instead of a decision for plaintiffs, the court remanded the case with directions to enter judgment in favor of IBM. *Id.* at 642.

The *Cooper* court first noted, with respect to the cash balance plan, that: "All terms of IBM's plan are age-neutral. Every covered employee receives the same 5% pay credit and the same interest credit per annum." *Id.* at 638. The court then compared the anti-age discrimination language added to ERISA in 1986 regarding defined benefit plans to the parallel provision covering defined contribution plans. For defined benefit plans, ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i) says:

> [A] defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age.

For defined contribution plans, ERISA § 204(b)(2)(A), 29 U.S.C. § 1054(b)(2)(A) says:

> A defined contribution plan satisfies the requirements of this paragraph if, under the plan, allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age.

As noted by *Cooper*, the language of one statute says what is not allowed, while the other says what works. *Id.* at 638. It is clear that these two parallel statutes have an identical purpose—to prohibit age discrimination in these two types of federally authorized pension plans. Accordingly, the parallel language should reference the same thing.

Because the term "benefit accrual" in the defined benefit plan provision is not defined, plaintiffs have argued that the definition of "accrued benefit" is applicable. Accrued benefit for defined benefit plans is defined as an amount "expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(a). As the Seventh Circuit expressed the issue, the district court was persuaded to look at "what the employee takes out on retirement" rather than "what IBM puts into the plan." *Id.* at 638. Since the "accrued benefit" (annual benefit commencing at normal retirement age) for a young person, who has more years for interest to compound before reaching age 65, is greater than the "accrued benefit" for an older person who has far less time for interest to compound, plaintiffs have argued that the difference in benefits meant that cash balance plans discriminate on the basis of age. In response to this claim, the Seventh Circuit said:

> This approach treats the time value of money as age discrimination. Yet the statute does not require that equation. Interest is not treated as age discrimination for a defined-contribution plan, and the fact that these subsections are so close in both function and expression implies that it should not be treated as

discriminatory for a defined-benefit plan either. The phrase "benefit accrual" reads most naturally as a reference to what the employer puts in (either in absolute terms or as a rate of change), while the defined phrase "accrued benefit" refers to outputs after compounding. *Id.* at 638–639. The court noted that this interpretation of "rate of benefit accrual" is supported by draft regulations from the Treasury Department treating "the 'rate of benefit accrual' as 'the increase in the participant's accrued normal retirement benefit for the year.' " *Id.* at 639. The Seventh Circuit concluded that " 'benefit accrual' (for defined-benefit plans) and 'allocation' (for defined-contribution plans) both refer to the employer's contribution rather than the time value of money between contribution and retirement." *Cooper* 457 F.3d at 639.

This Court agrees with the majority view expressed by the Seventh Circuit. One statute says that an employee's "benefit accrual" cannot be ceased or the "rate of an employee's benefit accrual" cannot be reduced. ERISA § 204(b)(1)(H)(I). The parallel statute says "allocations to the employee's account are not ceased" and "the rate at which amounts are allocated to the employee's account is not reduced." It is unfortunate that Congress chose to express one directive in negative language and the other directive in positive language, but the Congressional intent to avoid age discrimination under both plan types can only be carried out if "benefit accrual" means the same thing as "allocations to the employee's account." This Court finds additional support for this position in the analyses provided by the following cases.

The most recent case to address the issue of whether cash balance plans discriminate on the basis of age is *Laurent v. PriceWaterhouseCoopers,* 448 F.Supp.2d 537 (S.D.N.Y.2006). That court granted PriceWaterhouseCoopers' motion to dismiss the claim. Regarding the meaning of "benefit accrual," the court said:

> Because cash balance plans accrue benefits otherwise than traditional defined benefit plans, and in particular are not defined in terms of an age 65 annuity, it is logical that the rate of benefit accrual is not determined by the change in the age 65 annuity, but is instead determined by the change in account balance.

448 F.Supp.2d at 552–53. Regarding the plaintiffs' analysis, the court said: "Under this line of reasoning, all cash balance plans violate the ERISA age discrimination provision." *Id.* at 551–52. In rejecting the claim of age discrimination, the court said: "The effect of a younger employee's pay credits being worth more than those paid to older workers is caused not by discrimination but by the time value of money." *Id.* at 552–53. The *Laurent* court further noted that the Department of Treasury has consistently said that "cash balance plans are not age discriminatory." *Id.* at 554–55.

Like the Plaintiffs in the present case, the plaintiffs in *Laurent* relied heavily on the decision in *Richards v. FleetBoston Fin. Corp.,* 427 F.Supp.2d 150 (D.Conn. 2006), where the court equated the term "rate of benefit accrual" with "rate of accrued benefit." *Id.* at 164. That court recognized that if "a participant's rate of benefit accrual [is] to be 'measured in terms of the change in the balance of each participant's hypothetical account,' then the Amended Plan does not discriminate on the basis of age." *Id.* at 162, quoting *Eaton v. Onan Corp.,* 117 F.Supp.2d 812, 824 (S.D.Ind.2000). The *Richards* court was persuaded by the lower court decision in *Cooper v. IBM Personal Pension Plan,* 274 F.Supp.2d 1010 (S.D.Ill.2003), *rev'd,* 457 F.3d 636 (7th Cir.2006) and the simi-

larity in the phrases "benefit accrual" and "accrued benefit" to conclude that the "rate of benefit accrual" was to be measured "as a change in the annual benefit commencing at normal retirement age." *Richards,* 427 F.Supp.2d at 164–165. The *Laurent* court noted that *Richards* was the only current case with this conclusion and it disagreed with the *Richards* analysis. *Laurent,* 448 F.Supp.2d at 552–53.

In *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents,* 441 F.Supp.2d 516 (S.D.N.Y.2006), the court rejected a similar claim of age discrimination. Equitable Life Assurance Society of America ("Equitable") began in 1988 to change its traditional defined benefit plans based on final years of compensation to annually adjusted cash balance plans. *Id.* at 517–18. Its employees filed a class action claiming that the cash balance plans discriminated against older employees. The court granted summary judgment in favor of Equitable on this issue.[2]

The court explained the history of changes from traditional defined benefit plans to cash balance plans:

> By the late 1980's, particularly in light of changing economic conditions and uncertain stock markets, companies became interested in reducing their obligations under defined benefit plans. As the nation's work force became more mobile, the interest of participants in earlier vesting and more flexible portability of their retirement benefits also grew. Cash balance plans were introduced to satisfy these interests.

*Id.* at 520–21. The *Hirt* court carefully considered the legislative history associated with the anti-age discrimination provisions and the subsequent agency interpretations. In particular, it discussed the

2002 proposed regulations by the Internal Revenue Service. These proposed regulations acknowledged that "interest credits for a younger participant will compound over a greater number of years until normal retirement age than for an older participant," but then said "the rate of benefit accrual . . . is permitted to be determined as the addition to the participant's hypothetical account for the plan year." *Id.* at 546–47. Noting that proposed regulations do not have the force of law, the court said "they are entitled to respect to the extent that they have the power to persuade." *Id.* at 548–49. Moreover, the court said these proposed regulations "are consistent with the regulatory interpretations of related statutes" saying "cash balance plans and cash balance conversions are not inherently age-discriminatory." *Id.*

In *Tootle v. ARINC, Inc.,* 222 F.R.D. 88 (D.Md.2004), the court considered an age discrimination claim as a result of ARINC converting from a traditional defined benefit plan to a cash balance pension plan. *Id.* at 90. The court rejected the claim, saying:

> The potential claim of age discrimination arises only by applying a definition for accrued benefits which does not fit with the way cash balance plans are structured. The more sensible approach is to measure benefit accrual under cash balance plans by examining the rate at which amounts are allocated and the changes over time in an individual's account balance.

*Id.* at 94. The court denied class certification and dismissed the age discrimination count for failure to state a claim.

*Eaton v. Onan Corp.,* 117 F.Supp.2d 812 (S.D.Ind.2000) was one of the earliest

---

**2.** Summary judgment against Equitable was granted on a claim of materially defective

notice.

cases to address the issue presented here. As a result of Onan Corporation's converting its defined benefit plan to a cash balance design, its employees claimed age discrimination. *Id.* at 814–815. The court provided a thorough discussion of the history of cash balance plans, the benefits to employees and employers, and why older workers are unhappy with the conversions. *Id.* at 816–818. The court recognized that the "dispute between the parties is one of statutory interpretation" and that the change in the rate of accrued benefit, on which the employees relied, "results simply from the time value of money." *Id.* at 823. After carefully reviewing the legislative history, the purposes of the legislation and the practical impact of its decision, the court concluded that the anti-age discrimination provisions may not apply at all to employees under age 65. *Id.* at 826. It further concluded that "in the case of a cash balance defined benefit plan, the rate of benefit accrual should be defined as the change in the employee's cash balance account from one year to the next." *Id.* at 832–33.

Finally, in *Register v. PNC Financial Services Group, Inc.,* 2005 WL 3120268 (E.D.Pa.2005), the court considered the age-discrimination claims of current and former PNC employees arising from PNC's conversion of a traditional defined benefit plan to a cash balance plan. That court, likewise, recognized that the issue is one of statutory interpretation. *Id.* at *4. It reviewed the existing case law and concluded that it agreed with the analysis of *Eaton v. Onan Corp. Id.* at *6. The court found further support in the Treasury Department proposed 2002 regulations and the Revenue Proposals for 2005 and 2006 where the Department noted the disagreement between *Cooper* [before reversal] and *Eaton* and said: "cash balance plans and cash balance conversions are not inherently age-discriminatory." *Id.* at *7.

The court granted the PNC's motion to dismiss the complaint.

## 2. *Application of Recent Decisions to the Present Case*

The World Color Plan allocated 4 percent of each employee's monthly salary to the employee's Future Service Account and applied interest at the same rate to the account balance. These terms are age-neutral; everyone was treated the same.

Plaintiffs' claim of age discrimination was based solely on the opinion of their expert, who said in his report: "The rate of benefit accrual under a defined benefit plan is equal to the increase in the accrued benefit from one year to the next divided by the participant's compensation for the year." [DE # 57, Exhibit B, p.2]. From this definition of "rate of benefit accrual," which is tied directly to a change in "accrued benefit," Mr. Poulin analyzed World Color's cash balance plan and the changes at various ages in the accrued benefit. Based on this analysis, he concluded that the plan "reduces the participants' rates of benefit accrual by .01% to .04% with each year of advancing age. These reductions, which are solely attributable to age and to no other factor, are a clear violation of Section 204(b)(1)(H) of ERISA...." *Id.* pp. 2,8.

The fatal flaw in this analysis is that it hinges upon an incorrect definition of "rate of benefit accrual." While factual evidence must be viewed in favor of the non-moving party in deciding a motion for summary judgment, the dispute in this case does not involve a genuine issue of material fact. The entire dispute is the meaning of the phrase "rate of benefit accrual." Issues of statutory interpretation present questions of law, not fact. *U.S. v. Alvarez,* 266 F.3d

587, 592 (6th Cir.2001); *Ammex, Inc. v. U.S.,* 367 F.3d 530, 533 (6th Cir.2004).

With the lone exception of *Richards v. FleetBoston Fin. Corp.,* 427 F.Supp.2d 150 (D.Conn.2006), all courts considering the definition of "rate of benefit accrual" for defined benefit plans have concluded that it means the same as "allocation" for defined contribution plans or "what the employer puts in." *Cooper v. IBM Personal Pension Plan,* 457 F.3d 636, 639 (7th Cir. 2006) (" '[B]enefit accrual' reads most naturally as a reference to what the employer puts in"); *Laurent v. PriceWaterhouseCoopers,* 448 F.Supp.2d at 552–53 (S.D.N.Y.2006) ("[T]he rate of benefit accrual is not determined by the change in the age 65 annuity, but is instead determined by the change in account balance."); *Hirt v. Equitable Retirement Plan,* 441 F.Supp.2d at 549–50 (S.D.N.Y.2006) ("[T]he rate of contributions to Cash Account balances, and thus the rate of benefit accrual, do not change; they are equal regardless of age."); *Tootle v. ARINC, Inc.,* 222 F.R.D. 88, 94 (D.Md.2004) ("the more sensible approach is to measure benefit accrual under cash balance plans by examining the rate at which amounts are allocated and the changes over time in an individual's account balance."); *Eaton v. Onan Corp.,* 117 F.Supp.2d 812, 832–33 (S.D.Ind.2000) ("[I]n the case of a cash balance defined benefit plan, the rate of benefit accrual should be defined as the change in the employee's cash balance account from one year to the next."); *Register v. PNC Financial Services Group, Inc.,* 2005 WL 3120268 at *7 (E.D.Pa.2005) ("Cash balance plans are not defined in terms of an age 65 annuity, rather they are defined in terms of an account balance that grows with pay credits and interest. Therefore, it follows logically that the rate of benefit accrual is determined by the change in the account balance."). These decisions are supported by Treasury De-

partment interpretations of the statute. *Cooper,* 457 F.3d at 639; *Laurent,* 448 F.Supp.2d at 545–55, *Hirt,* 441 F.Supp.2d at 545–48, *Register,* 2005 WL 3120268 at *7–8. Agency interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944); *U.S. v. Mead Corp.,* 533 U.S. 218, 218–19, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

This Court joins the majority of courts in rejecting an interpretation of "rate of benefit accrual" for cash balance pension plans as being the same as "accrued benefit" and, instead, adopting a definition consistent with changes in the account allocations or account balance. Accordingly, the Defendant is entitled to summary judgment on this issue.

### D. The Relief Sought By Plaintiffs Is Not Available Under ERISA

■ Plaintiffs seek "a monetary judgment for their compensatory damages" and a mandatory injunction requiring Quebecor to reinstate the terms of the old Rand McNally Plan or modify the World Color plan to conform to the provisions of ERISA [DE # 1 pp. 17–18]. In their response to Defendant's Motion for Summary Judgment, Plaintiffs provide a "rough quantification" of the loss suffered by Drutis and Tkacz and the measure of damages they would present at trial [DE # 62 p. 7]. ERISA does not authorize a civil action for monetary damages, however. Section 502(a)(3) of ERISA provides a civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate **equitable relief** (i) to redress such violations or (ii) to enforce

any provisions of this subchapter or the terms of the plan.

(Emphasis added.) In *Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper, Inc.*, 382 F.3d 587 (6th Cir.2004), a plaintiff argued that an improper discount factor was used when calculating his lump sum retirement benefits. He claimed his benefit was $5,249.08 less than he should have received, and he sought recovery of additional lump sum benefits. The district court granted summary judgment for the plaintiff and ordered a recalculation of benefits. The Sixth Circuit reversed because "such relief ... was not available under the statutory provision on which the plaintiff elected to base his action." *Id.* at 589. "Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages....'" *Id.* at 594. *See also Callery v. U.S. Life Ins. Co.*, 392 F.3d 401, 405 (10th Cir.2004) (injunctive relief to compel payment of life insurance benefits is barred in that it is not equitable relief).

■ To the extent Plaintiffs seek reinstatement of the Rand McNally Plan or reformation of the World Color Plan, that relief is also unavailable. For Rand McNally Book employees, the Rand McNally Plan was merged into the World Color Plan when the Plaintiffs became World Color employees. The World Color Plan ceased to exist in 2000 when it was merged into the Quebecor Plan. The Quebecor Plan is not a cash balance plan. There is nothing to reinstate or reform. Thus, even if Plaintiffs had standing and stated a valid claim, they are not entitled to the relief they seek from the Defendant.

## V. CONCLUSION

The Court, being otherwise fully and sufficient advised, **HEREBY ORDERS:**

A. Defendant's motion for summary judgment [DE # 58] is **GRANTED;**

B. Plaintiffs' motion for partial summary judgment [DE # 57] is **DENIED;**

C. Judgment in favor of Quebecor World (USA), Inc. shall be entered contemporaneously with this Opinion and Order.