*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0340p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LARRY DRUTIS; HAROLD E. PARKER; JOE TKACZ; JOHN WAYNE SIMPSON, Individually and on behalf of all persons similarly situated,

    *Plaintiffs-Appellants,*

    *v.*

RAND MCNALLY & CO.; QUEBECOR WORLD (USA), INC.,

    *Defendants-Appellees.*

No. 06-6380

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 04-00269—Karl S. Forester, District Judge.

Submitted: July 20, 2007

Decided and Filed: August 27, 2007

Before: MARTIN and ROGERS, Circuit Judges; HOOD, District Judge.[*]

---

### COUNSEL

**ON BRIEF:** Charles W. Arnold, CHARLES W. ARNOLD, PLC, Lexington, Kentucky, for Appellants. Carol Connor Cohen, Gretchen Ann Dixon, ARENT FOX LLP, Washington, DC, for Appellees. Mary Ellen Signorille, AMERICAN ASSOCIATION OF RETIRED PERSONS, Washington, DC, Kent A. Mason, DAVIS & HARMAN, Washington, DC, for Amici Curiae.

---

### OPINION

---

ROGERS, Circuit Judge. The question in this case is whether so-called "cash balance" pension plans violate 29 U.S.C. § 1054(b)(1)(H)(i), an anti-age-discrimination provision of the Employee Retirement Income Security Act ("ERISA"). "Cash balance" plans are defined benefit plans that are structured like defined contribution plans. The district court in this case held, among other things, that the cash balance plan adopted by defendants did not violate the anti-age discrimination statute in question. We agree, and therefore affirm.

---

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

# I.

The facts of this case are not disputed and the following summary is taken largely from the fact section of the district court opinion. *See Drutis v. Quebecor World (USA), Inc.*, 459 F. Supp. 2d 580 (E.D. Ky. 2006). The four plaintiffs—Larry Drutis, Harold Parker, John Wayne Simpson, and Joseph Tkacz—were all previously employed by Rand McNally Book & Media Services ("Rand McNally Book") and participated in the Rand McNally & Company Pension Plan ("Rand McNally Plan"), a traditional defined benefit plan. On January 17, 1997, World Color Press, Inc. ("World Color") purchased Rand McNally Book, and the plaintiffs became employees of World Color. The employees' pension benefits were transferred from the Rand McNally Plan, which was merged into the World Color Press Cash Balance Plan ("World Color Plan"). Each former Rand McNally Plan participant who participated in the World Color Plan was credited with a "transition balance" in the new plan that was equal to the amount that the participant would have been paid had the participant taken a lump sum distribution of his Rand McNally Plan benefit on January 16, 1997. This sum was the full actuarial value of the employee's existing accrued benefit. Each month the transition account was credited with interest at the rate payable on one-year U.S. Treasury bills as of December 31 of the preceding year. Additionally, each World Color Plan participant had a "future service account" in which he received monthly credits equal to 4 percent of his monthly compensation plus interest at the one-year Treasury bill rate, with a minimum of 3 percent interest.

The World Color Plan had a "grandfather" provision applicable to those employees who: (1) had an accrued benefit under the Rand McNally Plan on January 16, 1997; (2) were 55 years old on or before that date; and (3) had at least five years of vesting service as of that date. "Grandfathered" participants could choose as a retirement benefit either (a) the benefit they would have received under the Rand McNally Plan had they continued to participate in that plan until their retirement date, or (b) their cash balance under the World Color Plan. Plaintiffs Drutis and Tkacz retired from World Color on December 31, 1998, and took the distribution of their benefits from the World Color Plan at that time. They both met all of the "grandfather" requirements, and they both chose to receive their benefits calculated as if they had continued in the Rand McNally Plan until their retirement dates. They both were also younger than 65 when they retired.

In 1999, a subsidiary of Quebecor Printing, Inc. merged with World Color, creating the defendant in this case, Quebecor World (USA), Inc. ("Quebecor").[1] In December 2000, the World Color Plan was merged into the Quebecor World Pension Plan, which is not a cash balance plan. After that date, the World Color Plan, which is the subject of this suit, ceased to exist. Accordingly, this case concerns only the World Color Plan in effect from January 17, 1997, through December 31, 2000.

Plaintiff Parker became disabled on August 5, 1996, and retired on disability effective January 31, 1997. He is younger than 65, and has not yet elected to receive his retirement benefits. Plaintiff Simpson is currently an employee of Quebecor and has not received any distribution of his retirement benefits. He is also younger than 65.

The plaintiff-employees and Quebecor filed cross motions for summary judgment in district court. The district court denied the plaintiffs' motion and granted Quebecor summary judgment. The district court held that two of the plaintiffs, Drutis and Tkacz, lacked constitutional standing because they were "grandfathered" into the Rand McNally Plan and therefore suffered no injury as a result of the provisions of the newer plan. *Drutis*, 459 F. Supp. 2d at 585. The district court also held that none of the plaintiffs could assert a claim of age discrimination under ERISA because each

---

[1]Plaintiffs voluntarily dismissed their claims against Rand McNally after discovery, leaving Quebecor World as the sole defendant in this action.

is under the age of 65. *Id*. at 586. In the alternative, the district court held that the World Color cash balance plan did not violate ERISA's anti-age-discrimination provision. *Id*. at 591. Finally, the district court held that the relief sought by the plaintiffs was unavailable under ERISA. *Id*. at 592.

## II.

The district court correctly held that two of the four plaintiffs lacked standing to bring this action because they suffered no injury as a result of the challenged plan. The World Color Plan included a "grandfathering" provision that allowed some employees to have their pension benefits determined under the previous Rand McNally Plan. Plaintiffs Drutis and Tkacz were covered by the grandfathering provision and elected to receive the same retirement benefit they would have received under the Rand McNally Plan. As a result of this election, the benefit received by each of these plaintiffs was unaffected by the conversion of the Rand McNally Plan to the World Color Plan. Because their benefits were not determined by the challenged plan, they suffered no injury as a result of the provisions of that plan.

On appeal, plaintiffs argue that, even though Drutis and Tkacz were not actually subject to the World Color Plan, they still suffered a cognizable injury because "each of them has been damaged by the loss of the difference between what they received [under the Rand McNally Plan] and what they would have received if the [World Color] plan were re-formed to meet the requirements of ERISA." Appellants' Br. at 27. Thus, the plaintiffs' argument is that, instead of choosing between the Rand McNally Plan and the allegedly discriminatory World Color Plan, they should have been able to choose a third option, namely a version of the World Color Plan absent the allegedly age discriminatory aspects.

The benefit to Drutis and Tkacz of this theoretical third plan, however, is entirely speculative. An alternative World Color plan without the allegedly age discriminatory aspects could offer a lower benefit to all employees. As the Seventh Circuit explained in *Cooper v. IBM Personal Pension Plan*, 457 F.3d 636, 642 (7th Cir. 2006), "employers can achieve equality more cheaply by reducing the highest benefits than by increasing the lower ones." Thus, any harm to Drutis and Tkacz is hypothetical at best, and it is well established that part of the "irreducible constitutional minimum of standing" is an injury in fact that is "an invasion of a legally protected interest which is . . . actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The district court also held that plaintiffs Parker and Simpson did not have "standing to assert a claim of age discrimination" because they were both under age 65, and the district court determined that "ERISA's anti-age discrimination provision does not apply to persons who are not already over the normal retirement age of 65 and continuing to work." *Drutis*, 459 F. Supp. 2d at 585.[2] Regardless of whether the district court's determination as to the scope of § 204(b)(1)(H)(i) is or is not correct, this is not a constitutional standing issue, but rather a question of statutory interpretation. Article III standing ultimately turns on whether a plaintiff gets something (other than moral satisfaction) *if the plaintiff wins*. It does not depend on whether or not there is a disputed

---

[2] As the district court noted, some courts looking at the legislative history of ERISA § 204(b)(1)(H)(i) have determined that the statute was intended to protect only workers who had reached the normal age of retirement, i.e., 65, and have therefore held that the statute is inapplicable to younger employees. *Drutis,* 459 F. Supp. 2d at 585 (citing *Laurent v. PriceWaterhouseCoopers*, 448 F. Supp. 2d 537, 552 (S.D.N.Y. 2006) and *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents*, 441 F. Supp. 2d 516 (S.D.N.Y. 2006)). Other courts, however, have found this limited construction unsupported by the language of the statute, which states that discrimination in the rate of benefit accrual because of the attainment of "any age" is prohibited. *See Sunder v. U.S. Bank Pension Plan*, 2007 WL 541595, *5 (D. Mo. 2007); *In re J.P. Morgan Chase Cash Balance Litigation*, 460 F. Supp. 2d 479, 484-85 (S.D.N.Y. 2006); *see also In re Citigroup Pension Plan ERISA Litigation*, 470 F. Supp. 2d 323, 340-41 (S.D.N.Y. 2006); *Richards v. FleetBoston Financial Corp.*, 427 F. Supp. 2d 150, 159 (D. Conn. 2006).

statutory impediment to winning. Such an issue goes to the merits. In light of our resolution below of the legality of cash balance plans, we need not decide whether the protection of § 204(b)(1)(H)(i) is limited to persons over 65. We assume, without deciding, that ERISA § 204(b)(1)(H)(i) does apply to plaintiffs Parker and Simpson despite the fact that both are under the age of 65, and proceed to the question of whether the World Color Plan discriminated against Parker and Simpson.

### III.

Contrary to the plaintiffs' assertions, cash balance plans do not discriminate based on age in violation of ERISA § 204(b)(1)(H)(i). That statute does not allow a plan provision that reduces "the rate of an employee's benefit accrual . . . because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i). The plaintiffs' argument is that "cash balance plans *per se* violate the provisions of ERISA." Appellants' Br. at 7. Accordingly, plaintiffs' claim turns on the nature of cash balance plans in general, and not upon any particular or unique provision of the World Color Plan. The contention that cash balance plans are necessarily age discriminatory under the terms of § 204(b)(1)(H)(i) fails, however, because that provision of ERISA addresses only the employer's contributions to the benefit plan, and any disparity in the benefits that employees of different ages receive from cash balance plans is merely the result of the time value of money.

Resolving the issue in this case requires an understanding of the differences between the two general types of pension plans. As the Third Circuit recently explained,

> There are two general types of pension plans: defined contribution plans and defined benefit plans. A defined contribution plan is a pension plan in which an individual account is established for an employee to which his employer (and sometimes the employee too) contributes a specific amount. The employee is entitled "to whatever assets are dedicated to his individual account." The employee bears the investment risks and the employer does not guarantee a retirement benefit to the employee.
>
> A defined benefit plan, on the other hand, is any plan that is not a defined contribution plan. 29 U.S.C. § 1002(35). It is generally a pension plan where the employee is promised a retirement benefit based on a formula the plan sets forth. The plan consists of a "general pool of assets rather than individual dedicated accounts." Participants in a defined benefit plan have no claim to any particular asset that composes a part of the plan's general asset pool, but, instead, receive "an annuity based on the retiree's earnings history, usually the most recent or highest paid years, and the number of completed years of service to the company." Under a defined benefit plan the entity funding the plan, i.e., the employer, bears the investment risks.

*Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 61-62 (3d Cir. 2007) (internal citations omitted).

A cash balance plan is, by statutory definition, a defined benefit plan. However, cash benefit plans are structured to function like a defined contribution plan.

> A cash balance plan is classified as a defined benefit plan because cash balance plans . . .are required to offer payment of an employee's benefit in the form of a series of payments for life . . . . Nevertheless, a cash balance plan differs from a traditional defined benefit plan in that traditional defined benefit plans define an employee's benefit as a series of monthly payments for life to begin at retirement, but cash balance plans define the benefit in terms of a stated account balance, albeit a "hypothetical" account. Thus, cash balance plans are like defined contribution plans in that both define the employee's benefit in terms of a stated balance.

*Id*. at 62 (internal citations and quotation marks omitted).

A feature of most cash balance plans is that the hypothetical account, which tells the employee how much his retirement benefit is worth, has two parts: "(1) 'pay credits' or 'earnings credits,' which are hypothetical contributions an employer makes usually expressed as a percentage of wages or salary and may vary with employee tenure, and (2) 'interest credits,' which are hypothetical earnings . . . on the account balance." *Id*. "Employers design cash balance plans so that when a participant receives a pay or earnings credit for a year of service, he also receives the right to future interest credits projected out until normal retirement age." *Id*. at 63. Because younger employees necessarily have a longer period of time before they reach age 65, the projected interest credits are necessarily larger because the projection includes a longer period of compound interest.

As the Seventh Circuit, the first court of appeals to address this issue, explained in *Cooper v. IBM Personal Pension Plan*, it is the difference in the value of the projected interest credits attributable to each employee that can lead to the mistaken belief that cash balance plans discriminate based on age.

> Much of the plaintiffs' argument rests on the idea that the account of a 25-year-old worker does not get 5% plus periodic interest, but instead is immediately credited with 5% of salary plus 40 years' interest. That makes the contributions look discriminatory: the 25-year-old worker's account receives 40 times as much interest credit in the year the contributions accrue as a 65-year-old worker's account.

*Cooper*, 457 F.3d at 640.

The court in *Cooper* went on to explain both the source of this apparently discriminatory feature of cash balance plans and why "this perspective misunderstands both the statute and the time value of money." *Id*.

> Nothing in either ERISA or the [cash balance] plan requires 40 years of interest to be credited to the account as soon as the young worker earns wages. What plaintiffs have in mind is the rule that, when any beneficiary (young or old) elects to take a cash distribution or roll the account into an annuity before reaching age 65, the plan must distribute a lump sum calculated to be the "actuarial equivalent" of the annuity that would be available at normal retirement age. ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3). To derive the "actuarial equivalent" of a pension at age 65, a plan must (a) add all interest that would accrue through age 65, then (b) discount the resulting sum to its present value. *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 762-63 (7th Cir. 2003). Plaintiffs characterize step (a) as extra interest credits for the young, but they ignore step (b). The discount rate may be close to (if it does not exceed) the rate at which interest is imputed, so the amount paid out in cash may be close to if not below the nominal balance in the account.

*Id*.

Essentially the plaintiffs in this case, as in *Cooper*, argue that the cash balance plan discriminated against older workers because younger workers, who received the same 4% "pay credit" and the same interest contribution at the one-year Treasury bill rate, would be entitled to a greater annuity upon the normal retirement age of 65. The plaintiffs argue that this, in effect, is a

relative reduction in older employees' rates of "benefit accrual" in violation of § 204(b)(1)(H)(i).[3] To reach this result, the plaintiffs define the term "benefit" in the phrase "rate of benefit accrual" as the overall benefit that the employee is entitled to receive upon retirement at age 65, which ERISA calls the "accrued benefit." 29 U.S.C.§ 1054(c)(3) (29 U.S.C. § 1002(23)(A)). When the "rate of benefit accrual" is defined in this way, "because of [the] conversion to an age 65 annuity, younger workers are credited with more years to accumulate interest on their hypothetical accounts. Therefore, as a matter of plain arithmetic, a greater value is added to a younger employee's account than to an older employee's account." *In re Citigroup Pension Plan ERISA Litigation*, 470 F. Supp. 2d 323, 344 (S.D.N.Y. 2006).

While some district courts have adopted the position argued by the plaintiffs, *see Richards v. FleetBoston Financial Corp.*, 427 F .Supp. 2d 150, 162-68 (D. Conn. 2006); *In Re J.P. Morgan Chase Cash Balance Litigation*, 460 F. Supp. 2d 479, 485-89 (S.D.N.Y. 2006); *In re Citigroup*, 470 F. Supp. 2d 323 (S.D.N.Y. 2006), the plaintiffs' position requires courts to equate "the rate of benefit accrual" with the term "accrued benefit," which is defined elsewhere in the statute. *See* 29 U.S.C.§ 1002(23) (defining "accrued benefit" in defined benefit plans in terms of an "annual benefit commencing at normal retirement age"). However, "Congress used different phrases in 29 U.S.C. § 1002(23) [defining "accrued benefit"] and § 1054(b)(1)(H) [the anti-age-discrimination provision], rather than the same phrase, and thus 'benefit accrual' and 'accrued benefit' should be understood to mean different things." *Finley v. Dun & Bradstreet Corp.*, 471 F. Supp. 2d 485, 491(D. N.J. 2007).

The better view, which has been adopted by both courts of appeals to have considered this issue, is that the "rate of benefit accrual" refers to the employer's contribution to a plan, and therefore any difference in output as a result of time and compound interest does not violate § 204(b)(1)(H)(i). *See Cooper*, 457 F.3d at 638-39; *Register,* 477 F.3d at 61-70. When read in context, and in comparison to the parallel provision prohibiting age discrimination in defined contribution plans, the Seventh Circuit is correct that, "[t]he phrase 'benefit accrual' reads most naturally as a reference to what the employer puts in (either in absolute terms or as a rate of change), while the defined phrase 'accrued benefit' refers to outputs after compounding." *Cooper*, 457 F.3d at 639. As the opinion in *Cooper* explains:

> The language on which plaintiffs rely was added to ERISA in 1986; Congress also enacted a parallel provision covering defined-contribution plans. Pub.L. 99-509, 100 Stat. 1874, 1975, 1976 (1986). We set these out alongside to facilitate comparison:

---

[3]The provision states as follows:

Notwithstanding the preceding subparagraphs, a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or *the rate of an employee's benefit accrual* is reduced, because of the attainment of any age.

ERISA § 204(b)(1)(H)(i) (29 U.S.C.A. § 1054(b)(1)(H)(i)) (emphasis added).

| Defined-benefit plans: ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i) | Defined-contribution plans: ERISA § 204(b)(2)(A), 29 U.S.C. § 1054(b)(2)(A) |
|---|---|
| [A] defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age. | A defined contribution plan satisfies the requirements of this paragraph if, under the plan, allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age. |

These appear to say the same thing, except that the rule for defined-benefit plans tells us what is not allowed, while the rule for defined-contribution plans tells us what works. Either way, the employer can't stop making allocations (or accruals) to the plan or change their rate on account of age. [A cash balance plan] does neither of these things and therefore, one would suppose, complies with the statute. If this were a real, rather than a phantom, defined-contribution plan, that much would be taken for granted. Yet if the 5%-plus-interest formula is non-discriminatory when used in a defined-contribution plan, why should it become unlawful because the account balances are book entries rather than cash?

Plaintiffs [argue] that the two subsections are radically different. That difference is attributable to the phrase "benefit accrual," which appears in the subsection for defined-benefit plans but not the one for defined-contribution plans. Neither ERISA nor any regulation defines this phrase . . . . [A different phrase, "accrued benefit"] is defined in § 3(23)(A), 29 U.S.C. § 1002(23)(A). An "accrued benefit" is an amount "expressed in the form of an annual benefit commencing at normal retirement age." Plug this back into § 204(b)(1)(H)(i), and the rule against discrimination then refers not to what [the employer] puts into the plan, but what the employee takes out on retirement.

. . . .

This approach treats the time value of money as age discrimination. Yet the statute does not require that equation. Interest is not treated as age discrimination for a defined-contribution plan, and the fact that these subsections are so close in both function and expression implies that it should not be treated as discriminatory for a defined-benefit plan either . . . . As long as we think of "benefit accrual" as referring to what the employer imputes to the account—an understanding reinforced by the use of the word "allocation" in the subsection addressing defined-contribution plans—there is no statutory difference between the treatment of economically equivalent defined-benefit and defined-contribution plans. For defined-benefit plans, where the account is an accounting entry rather than cash, "benefit accrual" matches the money "allocated" to a defined-contribution plan.

*Cooper*, 457 F.3d at 638-39.

We agree that the term "benefit accrual" as used in § 1054(b)(1)(H)(i) refers to the employer's contribution to the defined benefit plan. Accordingly, because under the World Color Plan, as with cash benefit plans generally, "[n]either the contribution rate nor the interest rate change[d] with age," plaintiffs have failed to show that the World Color Plan was age discriminatory. *Id*. at 640. Summary judgment was, therefore, proper in this case, and we need not reach the district court's holding that no form of relief sought by the plaintiff-employees is available under § 502(a)(3) of ERISA.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed.